## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Lukas Gayer

       Plaintiff,

                                    Case No.15-11202

v.                                   Hon. Denise Page Hood

United of Omaha Life Insurance Co.,

       Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 19) AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. # 18)

## I.    INTRODUCTION

Plaintiff filed a summary judgment motion seeking to reverse a denial of ERISA benefits by the plan administrator. (Doc. # 18). Defendant responded and filed its own summary judgment motion seeking to affirm the plan administrator's decision. (Doc. # 19).

## II.    BACKGROUND

United of Omaha Life Insurance Company ("United") provided a long term disability policy to Michigan Seamless Tube covering eligible hourly and salary employees. Under the policy, an insured claiming long term disability ("LTD")

1

benefits must also apply for other benefits to which the insured may be entitled, such as social security benefits. If applying for social security benefits, the insured must appeal denials to a level that is satisfactory to United and provide United with written proof of the appeals.

Lukas Gayer (Gayer) worked for Michigan Seamless Tube as a crane operator. As a result of his employment, he was covered under the LTD policy Michigan Seamless Tube had with United. As a crane operator, Gayer operated an overhead electric traveling crane to transport materials and equipment.  He assisted in the maintenance and repairs of the crane.  According to United, Gayer's job "required light physical exertion," requiring an the crane operator to climb a ladder or stairs to reach the cab of the crane in which the operator sits and operates the controls of the crane. (Doc. #19 at 9).

In November 2006, while he was at work, Gayer injured his back after falling 15 feet into a hole. As a result of his fall, Gayer suffered from back pain. On October 6, 2010, Gayer visited Dr. Glenn J. Minister about his back. He told Dr. Minister that after his back injury he went to physical therapy and underwent steroid shots; however, his pain was still rated as an eight out of ten. An X-ray and MRI revealed Gayer had a degenerated herniated L4-L5. Gayer and Dr. Minister discussed a lumbar decompression and fusion at the L4-L5 level.

2

On November 9, 2010, Dr. Minister performed on Gayer a laminectomy and fusion of L4-L5 and L5-SI. From November 9, 2010 - March 11, 2011, Gayer was on short term disability approved by United. During this time, Gayer presented United with medical documentation of his condition.

On April 23, United disputed his claim for disability, claiming that medical proof did not justify extending Gayer's disability leave. Therefore, United would not cover Gayer's disability from March 10, 2011, going forward. Gayer provided more medical documentation and on June 20, 2011, United reversed itself and stated it would cover Gayer's disability going forward from March 10, 2011. Gayer remained on disability to January 4, 2012. On January 20, 2012, United sent Michigan Seamless Tube notice that it was approving Gayer's claim for long term disability benefits effective November 9, 2010. Gayer filed applications for social security benefits which were denied. Gayer is currently in the process of appealing those denials. On April 26, 2013, United requested from Gayer's primary care physician Dr. Oostendorp permission for United to obtain a functional capacity evaluation ("FCE"). On June 20, 2013, Gayer participated in the FCE. The FCE results are summarized as follows:

> The results of this evaluation indicate that Lukas Gayer demonstrated an ability to function in the Sedentary Physical Demand Level according to the U.S. Department of Labor Standards for a 4 hour work day. It is likely that Mr. Gayer is capable of higher functional abilities than what was

demonstrated during testing today since he voluntarily terminated testing prior to completion. Abilities above were determined off of incomplete data.

Lukas Gayer demonstrated the ability to occasionally lift up to 10 lbs Floor to Waist, 15 lbs Waist to Shoulder, carry up to N/A lbs, push 40 pounds of force, and pull 40 pounds of force. Lukas Gayer demonstrated Constant sitting, Occasional standing, Occasional walking, not Tested stair climbing, Occasional reaching at desk level, Occasional reach at overhead level, Occasional reach floor level, Occasional balancing, Not Tested stooping, Not Tested kneeling, Not Tested crouching, Not Tested crawling, Frequent object handling, Frequent fingering, Frequent simple hand grasp, Frequent firm hand grasp, Frequent fine/gross hand manipulation. Lukas Gayer completed a single stage treadmill test at 2 mph and 5% grade. This was sufficient to predict Lukas Gayer's functional aerobic capacity at 3.56 METS for an 8 hour time period.

Deficits identified during testing include lumbar range of motion and lower quarter strength.

Lukas Gayer demonstrated consistent performance on performance consistency testing, however he demonstrated self limiting behaviors throughout material handling and positional tolerance testing. With termination of many functional tests, physiological responses (heart rate and respiratory rate) and movement and muscle recruitment patterns did not match the complaints of severe pain and maximal effort. Also, Mr. Gayer refused several activities due to reports of pain or potential pain and terminated testing prior to completion due to reports of pain. Based on these factors, the results of this evaluation can be considered to be a minimal representation of Lukas Gayer's functional abilities.

(Doc. # 11-3 at Pg. ID 326).

On September 20, 2013, Dr. Jospeh Salama, Diplomate American Board of Orthopedic Surgery issued a report regarding his Independent Medical Examination ("IME") of Gayer. It noted Gayer worked for Inland waters for two years rescuing people. This job required climbing, bending twisting, and lifting. It

is unclear exactly when he worked for Inland Waters. In other medical documentation, it stated that Gayer's job with Inland Waters involved dispatching and supervising and not anything physical. Prior to working for Inland Waters, Gayer worked as a crane operator. The report stated a crane operator requires light physical exertion. An occupational analysis detailing the physical demands of Gayer's job indicated light work, which is exerting up to 20 pounds of force occasionally, 10 pounds of force frequently, and a negligible amount of force constantly to move objects and that the physical demand requirements are in excess of those for sedentary work and that light work requires walking or standing to a significant degree.

The IME noted various medical records indicating Gayer's back pain. It noted his back surgery in 2010, and progress in March 2011, the time he began physical therapy and rehabilitation. The report noted that "a failure to improve post ten months after the fusion surgery and the L4-5 did not form a solid fusion." Gayer began steroid injections in his back. Through 2012, the report noted that Gayer complained of back pain. Dr. Salama noted the FCE and Gayer's alleged "self-limiting" behaviors. Dr. Salama noticed Gayer's muscular tone and opined that he must engage in strenuous physical exercise, which is something inconsistent with being totally disabled. The report stated that Dr. Salama found

Gayer exhibited signs of lack of effort in performing tests. Gayer had a "fairly good range of motion" and undressed and walked across the room without difficulty. The IME recommended Gayer should be restricted from lifting more than 15 pounds repetitively or 25 pounds at one time. He should also avoid repetitive bending and twisting. (Doc. # 11-2 at Pg. ID 268-77).

On October 18, 2013, Douglas Palmer, an independent vocational rehabilitation consultant, issued a transferable skill assessment for Gayer. The transferable skill assessment was based on Gayer's reported restrictions identified in the IME. It stated Gayer qualified for light work employment in other occupations, such as maintenance dispatcher, order caller, shipping checker, or industrial order clerk.  (Doc. # 11-2 at Pg. ID 249-52). The report noted that the suggested positions would unlikely provide wages meeting or exceeding his wages as a crane operator.

On January 13, 2014, United informed Gayer that it determined that he possessed a functional work capacity and had the transferable skills necessary to perform a job at the light or sedentary level. (Doc. # 11-2 at Pg. ID 223-230). United stated that under the "Maximum Capacity" provision of the policy, Gayer needed to attempt to find work within his functional abilities and notify United of any attempts he made to find work.  (Doc. # 11-2 at Pg. ID 229-230 ). United

6

based its decision on medical records from Dr. Oostendorp for the period of May 9, 2011 to November 27, 2012; medical records from Dr. Minster dating from January 4, 2012 to February 29, 2012; prescription records from Oakwood Pharmacy; Dr. Oostendorp's January 31, 2013, attending physician statement; the FCE; the IME; and the Transferable Skills Assessment. (Doc. # 11-2 at Pg. ID 224).

Gayer did not send any information regarding attempts to find work. Instead, on February 4, 2014, he sent United a letter from Dr. Oostendorp noting that Gayer was not fit for work and none of the work restrictions had been removed. The note restricted Gayer from sitting for more 15 minutes, overhead activity, only standing or moving as needed, no squatting, no lifting of more than 10 pounds from the floor or below the waist, limited standing and walking, no pushing, pulling, climbing, or repeated bending. The letter indicated that Gayer still suffered from severe back pain.

United replied stating that it would take time to review its decision. It even consulted Dr. Reeder, who opined based on Gayer's medical records that he was able to work. On August 13, 2014, United informed Gayer that it was standing by its decision and he could appeal its denial of long term disability benefits. Gayer filed suit seeking to reverse the decision of the administrator claiming that his

medical records indicate he is still unable to work. United responds that the medical reports support the administrator's finding that he is able to work.

## III.   STANDARD OF REVIEW

A district court conducts a *de novo* review of the plan administrator's denial of ERISA benefits, unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998). In this case, the plan administrator does not have discretionary authority to determine eligibility for benefits or to construe the terms of the plan, therefore the Court will use the *de novo* standard of review.

The *de novo* standard of review applies to the factual determinations as well as the legal conclusions of the plan administrator. *Id*. Under a *de novo* review, "the role of the court reviewing a denial of benefits is to determine whether the plan administrator made the correct decision." *Hoover v. Provident Life and Acc. Ins.*, 290 F.3d 801, 808 (6th Cir.2002) (internal quotations omitted). First, the Court must decide whether the administrator properly interpreted the Plan. *Id*. at 809. Applying general principles of contract law, the Court must read the Plan provisions "according to their plain meaning in an ordinary and popular sense" and construe any ambiguities in the plan against the drafter. *Williams v. Int'l Paper Co.*,

8

227 F.3d 706, 710 (6th Cir.2000). Second, "[T]he administrator's decision is accorded no deference or presumption of correctness,"instead, relying only on the record before the plan administrator at the time of its decision, the Court must decide whether the insured was entitled to benefits under the proper interpretation of the Plan provisions. *Hoover*, 290 F.3d at 809. To succeed on a disability claim benefits under ERISA, a plaintiff must prove by a preponderance of the evidence that he or she was "disabled," as that term is defined in the Plan. *Tracy v. Pharmacia & Upjohn Absence Payment Plan*, 195 Fed. Appx. 511, 516 (6th Cir.2006). The court must first look to the nature of the plaintiff's job, then to the medical evidence, applying the evidence to the occupational standard. *Elliott v. Metropolitan Life Ins. Co.*, 473 F.3d 613, 618 (6th Cir.2006).

## IV.   DISCUSSION

The parties claim to dispute whether Gayer has work capabilities that fit under the "maximum capacity" provision of the plan, which states:

> **Maximum Capacity**: means, based on Your medical restrictions and limitations: (a) during the first 24 months of Disability payments, the greatest extent of work You are able to do in Your Regular Occupation; and (b) after 24 months of Disability payments, the greatest extent of work You are able to do in any occupation that is reasonably available and for which You are reasonably fitted by education training or experience.

(Doc. 11-1 at Pg. ID 67-68). In other words, after looking at Gayer's medical records is he capable of performing work with his restrictions.

9

After reviewing the medical record, the plan administrator was correct in denying Gayer LTD benefits. The administrative record supports a finding that Gayer is capable of light or sedentary work. Under 20 C.F.R. § 404.1567, which has the same definitions as the Dictionary of Occupational Titles, published by the Department of Labor,  sedentary work involves:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

*Cole v. Comm'r of Soc. Sec.*, No. 2:13-CV-250, 2014 WL 3809794, at *5 (S.D. Ohio Aug. 1, 2014). Regarding physical exertion, the Dictionary of Occupational Titles defines sedentary as:

> [e]xerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

*Id*.  (citing Department of Labor, Dictionary of Occupational Titles, Appendix C (4th ed. rev.1991), available at http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.

Gayer's FCE report, at least for the tests he completed, demonstrated he could push and pull up to 40 pounds of force, occasionally lift up to10 lbs from the floor to his waist and 15 lbs from his waist to his shoulder, constantly sit, occasionally stand, walk, reach at desk and overhead level and complete frequent fine/gross hand manipulation. These actions are consistent with sedentary work requirements, which means that  Gayer is capable of functioning in the Sedentary Physical Demand Level for a four hour work day.

Gayer challenges the FCE noting that it stated it was a "minimal representation of Lukas Gayer's functional abilities." However, the FCE noted that Gayer exhibited "self limiting behaviors throughout material handling and positional tolerance testing."(Doc. # 11-3 at Pg. ID 326). Consequently, it was appropriate for United to rely on the FCE to gauge Gayer's functional capabilities

In regards to Dr. Oostendorp's medical records, they do not appear to restrict Gayer's ability to work. Dr. Oostendorp's evaluation forms stated "check if system is queried" and "circle abnormals." *See e.g.* (Doc. 11-3 at Pg. ID 399). In February 2012, Dr. Oostendorp did not indicate any irregularities in Gayer's orthopedics; rather, the record indicated normal "gait and station, muscle tone and strength." In June and July of 2012, Dr. Oostendorp noted abnormal gait and station, muscle tone and strength under the orthopedic category, and noted that

Gayer had joint pain and stiffness, presumably in his back. But, in August, and twice in November Dr. Oostendorp's forms do not list any abnormalities with Gayer's orthopedic system. Instead, the records indicate once again he had normal gait and station, muscle tone and strength.  None of Dr. Oostendorp's records from 2012 discuss limiting Gayer's ability to work.(Doc. # 11-3 at Pg. ID 400-416).

Dr. Oostendorp's records did not reveal material abnormalities or deformities in Gayer's back, for instance, Dr. Oostendorp reported a normal MRI for Gayer's back. In fact, none of the treating physicians have reported any significant malformations in Gayer's back that could be the cause of his alleged increasing back pain.

There are inconsistencies in Gayer's medical records that suggest Gayer is downplaying his capabilities.  During the FCE in June 2013, Gayer claimed that as a result of his back pain he needed help dressing, putting on socks, and undergarments. Yet, at the IME in September 2013, Gayer was able to dress and undress without difficulty, and walk across the examination room without difficulty. These inconsistencies, combined with Gayer's alleged self-limiting behavior during the FCE, suggest Gayer's is physically capable of performing more activities.  Accordingly, the Court finds that Gayer is not entitled to long term benefits.

## V.      CONCLUSION

Plaintiff's Motion for Summary Judgment is **(Doc. # 18)** is **DENIED**.

Defendant's Motion for Summary Judgment **(Doc. # 19)** is **GRANTED**.

**IT IS ORDERED.**

s/Denise P. Hood
Honorable Denise Page Hood
United States District, Chief Judge

Dated: September 6, 2016

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 6, 2016, by electronic and/or ordinary mail.

s/Keisha Jackson
for Case Manager L. Saulsberry

13